IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| JAMES DANIEL LEWIS,<br><br>      Plaintiff,<br><br>      v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>      Defendant. | CIVIL ACTION NO.: 5:20-cv-3 |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff contests the decision of Administrative Law Judge Craig R. Peterson ("the ALJ" or "ALJ Peterson") denying his claim for a Period of Disability and Disability Insurance Benefits. Plaintiff urges the Court to reverse and remand the ALJ's decision. Doc. 16 at 23. Defendant asserts the Commissioner's decision should be affirmed. Doc. 17 at 30. For the reasons which follow, I **RECOMMEND** the Court **REMAND** this case to the Commissioner under sentence four of 42 U.S.C. § 405(g). I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

**BACKGROUND**

Plaintiff filed an application for a Period of Disability and Disability Insurance Benefits on February 6, 2015, alleging an onset date of June 23, 2013, due to an injured back, high cholesterol, and anxiety. Doc. 12-3 at 2, 16 (R. 126, 140); Doc. 12-5 at 4–12 (R. 365–73). An ALJ initially denied Plaintiff's claim for disability after a hearing. Doc. 12-2 at 91–126 (R. 90–125); Doc. 12-3 at 34–59 (R. 158–83). Plaintiff then appealed to the Appeals Council, which granted Plaintiff's request and remanded the case back to ALJ Peterson on May 3, 2018.

Doc. 12-3 at 60–62 (R. 184–86).  On April 16, 2019, ALJ Peterson held a second hearing at which Plaintiff, who was represented by counsel, appeared and testified.  Doc. 12-2 at 15 (R. 14).  Kim Edwards Bennet, a vocational expert, also appeared at the hearing.  Id.  ALJ Peterson found Plaintiff was not disabled within the meaning of the Social Security Act ("the Act").  Id. at 12, 32 (R. 11, 31).  The Appeals Council denied Plaintiff's request for review of the ALJ's decision, affirming the ALJ's findings.  Id. at 2 (R. 1).

Plaintiff, born on November 24, 1968, was 44 years old when his alleged disability began, was 50 years old on December 31, 2018, the date he was last insured for disability insurance benefits, and was 50 years old at the ALJ's second decision in 2019.  Doc. 12-2 at 18, 71 (R. 17, 70); Doc. 12-3 at 2 (R. 126).  He graduated high school but did so while receiving special education services.[1]  Doc. 12-2 at 19 (R. 18).  Plaintiff's past relevant work experience includes working as a lead worker, road roller operator, maintenance mechanic, and line assembly worker.  Id. at 30 (R. 29).

## DISCUSSION

I. **The ALJ's Findings**

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

---

[1] Plaintiff contends he graduated high school but with a special education diploma.  Doc. 16 at 5.  Defendant, however, asserts Plaintiff only attended one year of special education classes and graduated with a "regular" diploma.  Doc. 17 at 29.  At the hearing, the ALJ found Plaintiff received special education services while in school and acknowledged Plaintiff's testimony he received a special education diploma.  Doc. 12-2 at 19 (R. 18).  There is some ambiguity in the record regarding how much special educational Plaintiff received.  See Doc. 12-6 at 8, 138, 140, 142, 152 (R. 416, 546, 548, 550, 560).  Plaintiff's school records indicate Plaintiff received a "regular diploma."  Id. at 140 (R. 548).  Regardless, whether Plaintiff received a "special education diploma" or a "regular diploma" is not material to the issue addressed below—namely, whether the ALJ properly weighed the treating physicians' testimony.

2

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).  Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability.  20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity."  Id.  If the claimant is engaged in substantial gainful activity, then benefits are immediately denied.  Id.  If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments.  Id. at 140–41.  If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three.  The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004).  If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled.  Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform his past relevant work.  Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693

(11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments." Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to make adjustments to other work in the national economy, considering his age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

Here, the ALJ followed this sequential process to determine Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date through his date last insured. Doc. 12-2 at 18 (R. 17). At step two, ALJ Peterson determined Plaintiff had the following severe impairments: lumbar spine pain; thoracic spine degenerative disc disease; partial Dupuytren's contracture of the left right finger; cervicalgia; headaches; fibromyalgia; and depression. Id. The ALJ also determined Plaintiff had the following non-severe medical impairments: congenital cardiac disease; status post valve repair; hypertension; hyperlipidemia; gastroesophageal reflux disease; and left knee osteoarthritis. Id. At the third step, the ALJ determined Plaintiff's impairment did not meet or medically equal the severity of a listed impairment. Id. at 18–19 (R. 17–18). The ALJ found Plaintiff has the residual functional capacity to perform work at the light exertional level, with the following exceptions: he can push or pull up to ten pounds only occasionally; stand or walk six hours of an eight-hour workday and sit up to six hours of an eight hour work day; he can only occasionally climb stairs and ramps; he can never climb ladders or scaffolds; he can frequently balance and handle, finger and feel; he can occasionally stoop, kneel, crouch , crawl, perform overhead work and use foot controls; no exposure to vibration, unprotected heights or hazards, or wetness; and he is limited to simple,

routine tasks involving simple work-related decisions with few, if any, workplace changes. Id. at 20 (R. 19). At the next step, the ALJ determined Plaintiff could not perform his past relevant work. Id. at 30 (R. 29). The ALJ concluded at the fifth and final step Plaintiff could perform the jobs such as marker and small products assembler, both of which are unskilled jobs at the light exertional level and which exist in significant numbers in the national economy. Id. at 31 (R. 30).

**II.     Issues Presented**

Plaintiff asserts four enumerations of error: (1) the ALJ did not explicitly analyze the listing requirements of Listing 12.05, despite discussing some of the evidence relating to its requirements; (2) the ALJ did not properly weigh the treating physicians' medical opinions; (3) the ALJ did not comply with the Appeals Council's remand order; and (4) the ALJ relied upon a vocational witness' answer to a hypothetical question based on an incorrect assumptions. Doc. 16 at 3–4.

**III.    Standard of Review**

It is well-established judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345-T-27TGW, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

**IV.     Whether the ALJ Properly Weighed the Treating Physicians' Testimony at Step Four**

Among other enumerations of error, Plaintiff argues ALJ Peterson did not properly weigh treating physicians Dr. Galea's and Dr. Waters' opinions when the ALJ gave only "little weight" to their opinions and provided limited explanation for that decision. Doc. 16 at 15 (citing Doc. 12-2 at 29 (R. 28)). Moreover, the ALJ failed to acknowledge the relationships of the physicians to Plaintiff. Id. at 17. Ultimately, according to Plaintiff, the ALJ's "scant analysis" does not provide the required "good cause" for his rejection of the treating physicians opinions and makes

6

meaningful review of the ALJ's analysis impossible.  Id.  Thus, Plaintiff asks this Court to remand the case so the ALJ may reweigh Dr. Galea's and Dr. Waters' opinions.  Id. at 21.

Defendant acknowledges an ALJ is generally required to give a treating physicians' opinions more weight and is required to give good reasons for the weight given to treating physicians' opinion.  Doc. 17 at 15.  Defendant argues, however, the ALJ properly weighed Dr. Galea's and Dr. Waters' opinion and properly explained his decision to grant the opinions little weight, which was supported by substantial evidence.  Id. at 16, 24.  Defendant asserts the ALJ provided substantial evidence supporting his decision to assign the treating physicians' opinions little weight, and further, his findings are supported by the record.  Id. at 16–19.  Additionally, because ALJ Peterson "thoroughly discussed" the medical records relied on to support the weight he assigned to Dr. Galea's and Dr. Waters' opinions, he was not required to repeat the supporting evidence when assigning weight to their opinions.  Id. at 22.

Dr. Waters has been Plaintiff's primary care physician since at least 2010, and Dr. Galea has been his rheumatologist since 2015.  Doc. 12-7 at 248–50 (R. 872–74); Doc. 12-9 at 226 (R. 1360).  Among other things, Dr. Waters and Dr. Galea offered opinions about Plaintiff's functional limitations, including Plaintiff's need to lie down several times a day, Plaintiff's need to alternate sitting and standing throughout the day, and Plaintiff's need to be absent from work more than three times per month.  Doc. 12-9 at 255–57 (R. 1389–91); Doc. 12-10 at 122–124 (1512–14).  The ALJ gave little weight to Dr. Galea's and Dr. Waters' opinions, stating the opinions "are not based on expertise and are inconsistent with clinical examination findings, and that they are overly reliant on the claimant's subjective complaints and limitations."  Doc. 12-2 at 29 (R. 28).  The ALJ provided no other explanation for his decision to give limited weight to these opinions.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178–79 (11th Cir. 2011) (alteration in original) (quoting 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2)).  "The ALJ has wide latitude to determine what weight to assign to those opinions, so long as he operates within the regulatory and judicial frameworks." Zanders v. Colvin, No. CV412-182, 2013 WL 4077456, at *5 (S.D. Ga. Aug. 12, 2013).

For claims like Plaintiff's, filed before March 27, 2017, an ALJ must, in certain circumstances, give controlling weight to the medical opinion of a physician who has rendered ongoing treatment to a claimant.[2] 20 C.F.R. § 404.1527(c)(2).  Specifically, the ALJ must give controlling weight to the opinion of a treating physician where the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record[.]" Id.  A medical opinion "need not be supported directly by all of the other evidence" to be not inconsistent with the record; however, if there is "substantial evidence in the case record that contradicts or conflicts with the opinion[,]" then the opinion is not entitled to controlling weight.  Social Security Ruling 96-2p.

If the ALJ does not assign controlling weight to the medical opinion, the ALJ must consider: (1) the examining relationship; (2) the treatment relationship; (3) the degree to which an opinion is supported by evidence; (4) consistency with the record as a whole; (5) the

---

[2]   For claims filed on or after March 27, 2017, adjudicators of Social Security claims are not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

8

physician's specialization related to the medical issues; and (6) any other factors which tend to support or contradict the medical opinion.  Brock v. Comm'r, Soc. Sec. Admin., 758 F. App'x 745, 750 (11th Cir. 2018) (citing to 20 C.F.R. § 416.927(c)).  "Nothing in the regulations requires the ALJ to explicitly discuss each of the factors in his or her decision." Id.  The ALJ need only "state with particularity the weight given to different medical opinions and the reasons therefor;" if the ALJ does not do so, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  Winschel, 631 F.3d at 1179 (citing Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

The law of this Circuit is a corollary requirement that "the testimony of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary."  Lewis, 125 F.3d at 1440 (internal quotations omitted).  "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'"  Winschel, 631 F.3d at 1179 (quoting Phillips, 357 F.3d at 1241).  "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error."  Lewis, 125 F.3d at 1440.  A court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it."  Hunter v. Soc. Sec. Admin., 808 F.3d 818, 823 (11th Cir. 2015).  Even so, "[a]n ALJ is not entitled to pick and choose through a medical opinion, taking only the parts that are favorable to a finding of nondisability."  Kerwin v. Astrue, 244 F. App'x 880, 885 (10th Cir. 2007).

As treating physicians, Dr. Galea's and Dr. Waters' opinions were entitled to substantial or considerable weight unless good cause was shown to the contrary. However, the ALJ gave Dr. Galea's and Dr. Waters' opinions "little weight" because "they are not based on expertise and are inconsistent with clinical examination findings, and they are overly reliant on the claimant's subjective complaints and limitations." Doc. 12-2 at 29 (R. 28). In Dr. Galea's medical source statement, taken March 31, 2016, he indicated Plaintiff has significant limitations in sitting, standing, and walking due to his back pain. Doc. 12-9 at 255–57 (R. 1389–91). The conclusions in Dr. Waters' statement on July 14, 2017 note the same mobility limitations. Doc. 12-10 at 122–24 (R. 1512–14).

Defendant argues the ALJ correctly weighed these opinions because they were not supported by "objective clinical findings, radiological testing, and conservative treatment modalities." Doc. 17 at 18–19. But ALJ Peterson does not mention radiological testing or conservative treatment modalities as a reason for the weight assigned to Dr. Galea's and Dr. Waters' opinions. Similarly, Defendant states Drs. Galea and Waters did not provide sufficient supporting explanation to suggest their findings were based on something other than Plaintiff's complaints. Id. at 19. Again, however, this is not an explanation the ALJ himself provides for discounting Dr. Galea's and Dr. Waters' opinions. To the extent the ALJ believed inconsistencies existed between Dr. Galea's and Dr. Waters' opinion and their clinical examination findings, it is impossible to discern what those inconsistencies were from the ALJ's terse treatment. Though the ALJ notes the treating physicians' opinions are not based on their expertise, he does not identify the expertise Dr. Galea and Dr. Waters are lacking or why the absence of that expertise warrants giving their opinions diminished weight. Doc. 12-2 at 29 (R. 28).

Defendant is correct that an ALJ may consider specialization and expertise in evaluating how to weigh an opinion, but this factor alone does not excuse the ALJ from his duty to explain how it led him to discount the treating physicians' opinion. Finally, while Defendant cites to information in the record which may support the ALJ's assignment of weight to the treating physicians' opinions, ALJ Peterson's decision to give these opinions little weight does not make any reference to this information. Doc. 17 at 21. In other words, Defendant provides record support for assigning Dr. Galea's and Dr. Waters' opinion little weight the ALJ never invokes.

The ALJ's conclusory statement that Dr. Galea's and Dr. Waters' opinions were not consistent with the clinical examination findings, outside their area of expertise, and overly reliant on Plaintiff's complaints impedes the Court's review of his decision and obscures his rationale. The Court cannot determine whether the ALJ properly discredited the treating physicians' opinions if the ALJ does not better explain how the treating physicians' opinions are inconsistent with the record by citing to substantial medical evidence in the record. See, e.g., Stroman v. Astrue, 08-22881-CV, 2009 WL 3669640, at *3 (S.D. Fla. Nov. 4, 2009) (holding ALJ failed to clearly articulate the reasons for rejecting treating physician's opinion when ALJ noted "opinion was contrary to other medical evidence, but did not specify what that evidence was," and noted "opinion was inconsistent with [treating physician's] treatment notes but did not specify how that was the case"). Further, Defendant's explanations for the ALJ's treatment of the treating physicians' opinions do not cure the deficiencies. NLRB v. Ky. River Cmty. Care, Inc., 532 U.S. 706, 715 n.1 (2001) (explaining a court reviewing administrative agency action may not "substitute counsel's post hoc rationale for the reasoning supplied by the" agency itself").

To be clear, the Court takes no stance on the correctness of Dr. Galea's or Dr. Waters' opinions, and the Court is not suggesting the ALJ must, or should, grant their opinions any weight, let alone substantial weight. Dyer, 395 F.3d at 1210 ("[The court] may not decide facts anew, reweigh the evidence, or substitute [the court's] judgment for that of the Commissioner."). Rather, if the ALJ discredits the opinion of the physicians, he must provide an adequate explanation of his reasons for doing so. Without such guidance from the ALJ, the Court is unable to exercise meaningful judicial review.

Accordingly, I **RECOMMEND** the Court **REMAND** the case to the Commissioner for further consideration. Given my remand recommendation, I also recommend the Court decline to address Plaintiff's remaining enumerations of error at this time. Doc. 13 at 15–21.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **REMAND** this case to the Commissioner under sentence four of 42 U.S.C. § 405(g). This remand under sentence four would terminate this Court's jurisdiction over the matter. Therefore, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions

on appeal by failing to file timely, written objections. Harrigan, 2020 WL 6039905, at *4; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 22nd day of February, 2021.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA